Good morning, Honors. If it pleases the Court, I'm Joseph Walsh, the attorney for the appellant Jesse Mendivil, and I'd like to direct my arguments this morning to Argument 4 in the opening brief, the sufficiency of the evidence supporting the finding of over 50 grams of methamphetamine, which had the consequence of establishing the mandatory minimum and requiring the implementation of the higher guidelines for methamphetamine, which was a level 30 rather than the lower guidelines for the amount of heroin in the case, which was a level 12 under the guidelines. The jury convicted Mr. Mendivil of the crime of conspiracy to distribute heroin and methamphetamine and made the finding of over 50 grams of methamphetamine and under 100 grams of heroin. The defendant then moved for a motion for an acquittal and a striking of the methamphetamine finding and it was denied by the district court, and then he was sentenced to 20 years, 120 months, and the conviction was based on eight phone calls that were intercepted over the wiretap. There was no evidence of any drugs seized from Mr. Mendivil. There was no drugs seized from his house. He was never involved in any methamphetamine negotiations. The only thing. If the conspiracy involved both heroin distribution and methamphetamine distribution, can you split it up and say, well, because you were talking about meth and not heroin as a co-conspirator, you're absolved of responsibility under that particular branch of the conspiracy. It's all one conspiracy, isn't it? It is, but for purposes of sentencing, you have to have two separate analyses. In other words, the jury can say that it's one conspiracy to distribute heroin and methamphetamine, and he's guilty of it, but then you have to turn to the question of, is he responsible for the higher amounts of methamphetamine, which trigger the mandatory minimum 10 years, and is he responsible for the higher amounts of methamphetamine, which require the imposition of the 20-year sentence instead of the 3-year sentence that I was arguing before the district court. And in that case, the recent nights. Can I ask you to co-conspirator all that's foreseeable? Wasn't there evidence that it was foreseeable that they would deal significant amounts of methamphetamine, including the amount for which he was sentenced? Well, that has to be a determination made under the facts and the evidence, and there has to be evidence supporting that. And the unfortunate thing in this case is the case was tried before the Ninth Circuit case of the United States versus Tories, which was September. It was decided right around the time my client was being sentenced by the Ninth Circuit, and it really laid out and clarified the law. And it said for in the Tories case, which we cited in the briefs, it says that for a defendant to be held responsible for jointly undertaken criminal activity based on the conduct of others, for both the guidelines drug quantity and the 851 mandatory minimum drug quantity, there must be evidence to show both that the conduct was in furtherance of the jointly undertaken criminal activity and was reasonably foreseeable. And what I'm focusing on is that first prong of the two-prong test. And the question becomes, what is the scope of Mr. Mendeville's agreement with Mr. Brokus when he became a member of this conspiracy? And that determination has to be ---- Well, the government's theory and the evidence they presented, which the jury accepted, was that he was Mr. Brokus's right-hand person and was responsible for collection. So given the fact that it's a single conspiracy, during which lower-level members distribute both heroin and methamphetamine, and there's no indication that his collection was somehow limited to one type of narcotics and excluded the other, how do you address that evidence? Well, there was really only ---- although there were eight telephone calls, there was really only two that were recriminating. One is where he called up and asked, how much does a small package of heroin cost? The answer was $10. And he said, thanks, I'm going to tell my neighbor. And then the second one was he collected $100 from a person named Lucky who owed that money to Mr. Brokus. And there was never any proof as to what that was for because the collections were for taxing the gangs, it would be for collecting money for drugs, could be taxing drug dealers. And assuming the jury found that that was drug money, there was never any evidence concerning what drug was involved. It could have been cocaine or heroin or methamphetamine or even marijuana. And so if there's going to be evidence establishing what the scope of Mr. Mendeville's agreement with Mr. Brokus was, there has to be some evidence pointing to it. Well, why isn't that evidence presented through expert testimony talking about the hierarchy of these organizations, the tax system, his role as the collector? Isn't that evidence enough to fill that gap that you're identifying? In certain circumstances, expert testimony can establish credible evidence upon which you can make these factual findings, but they can't opine expert testimony on a call involving money and say, in my expert opinion, that money is for methamphetamine because you just can't. That's speculation. Here we have a call where Mr. Mendeville says, I've collected $100 from Lucky that he owes you, and then there were some discussions thereafter about drug trafficking and the reason people have trouble paying is because they use the drugs themselves. But they never identified what the drug was. In all of the eight calls that Mr. Mendeville was followed, the only time a drug was identified was when he called about heroin. He asked for a paquito de negro, which was a Spanish slang term that the expert told us meant heroin. And so Mr. Mendeville was involved in perhaps brokering a sale of $10 worth of heroin, and that's the only drug telephone call in all of the calls. I also have testimony from the expert, though, that one moved up in the hierarchy of the gang if you were a bigger producer, et cetera. And so we get back to the foreseeability issue that it was foreseeable that the more you sell, the more you make, the stronger you are. And as Judge Wynn pointed out, he was the right-hand man. So why is it not foreseeable that they would seek to distribute more drugs and why couldn't he have been sentenced for that? Because the telephone calls never established that he was a seller of drugs. He appeared to be not so much the right-hand man of Mr. Brokers as a gopher. I mean, there was eight calls and he was sent on little missions by Mr. Brokers. But how about when he was inquiring about the black tar heroin? Yes. Wouldn't that be if you were a supplier or a middleman, you supplied drugs and you sold them, you would be checking on prices for certain quantities? Yes, but then once again we come back to the question, what's the scope of his actual agreement with Mr. Brokers? Is it methamphetamine or is it heroin? And the black tar heroin telephone call is the only telephone call in which the subject of the identity of the drugs is disclosed. And the burden is on the prosecution. We can't just presume that because he was a member of this conspiracy that he was involved in selling and distributing methamphetamine or having anything to do with methamphetamine. There has to be proof in the record. It's clear that there's evidence that he was a helper of Mr. Brokers. But the label of him being the right-hand man was just a label. That was just claimed by the government. They really never had proof of that. They never called Mr. Brokers as a witness in the case to explain what Mr. Mendeville's role was. And so we're left with just those eight telephone calls. And the telephone calls just seem to me to portray a person who is a gopher for Mr. Brokers, who is the lead. And the only connection with drugs is the black tar heroin inquiry concerning $10 and then the collection of $100 from Lucky, and we don't know why that money was owed. We can speculate that it could have been a drug deal. But it could have been taxes because part of the conspiracy was to tax the gangs. And our tax drug dealers. Or it could have just been a loan. And that's the problem. There has to be proof. What we're looking for is what is the scope of Mr. Mendeville's conspiracy, and did that scope include the distribution of over 50 grams of methamphetamine. And you can only find the scope of that agreement from those eight phone calls. And they're just simply not there. It looks as though the ---- Are you asking us not to look at the scope of the conspiracy, but limit it just to Mr. Mendeville's involvement? That's really what you're asking. No, what I'm asking for is this is a sentencing appeal. And what I'm asking the court to say, was he properly sentenced to over 50 grams of actual methamphetamine, which is a level 30 and a mandatory minimum 10, under evidence that shows that he made inquiry concerning a $10 purchase of heroin and collecting money. And so I think there's a grave concern that he was over-sentenced and the district court didn't really conduct the correct analysis of the evidence. And the problem was the law was kind of in flux at the time the case was tried, and the jury was just told, you know, now that you've convicted in conspiracy, what amounts of methamphetamine was involved, what amounts of heroin were involved. And, of course, the government introduced that methamphetamine seized from co-defendants. So there was over 50 grams actually in the case. But for sentencing purposes and mandatory minimum purposes, there had to be a determination that those 50 grams were part of the scope of Mr. Mendeville's agreement. And that has to be based on the evidence in the case. And the way the case was tried, they just presented eight phone calls. And only one phone call dealt with drugs, and that was heroin. And the other incriminating phone call was collecting money, and we don't know what the money was collected for. And then the rest of it was sort of gang conversations back and forth between Mr. Mendeville and Mr. Brokus. We've got your argument. Do you want to save a little bit of time for rebuttal? Yes, I'd like to save some time for rebuttal. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Julia Reese, and I represent the United States. The evidence in this case was sufficient to conclude that Mr. Mendeville understood that the conspiracy involved both heroin and methamphetamine. The evidence was sufficient to conclude, viewing it in the light most favorable to the government and drawing every inference in favor of the verdict, that the collection of money and the enforcement of the hierarchy were necessary components of furthering the conspiracy's drug distribution operations. And there was no evidence whatsoever that Mr. Mendeville's agreement with Mr. Brokus distinguished between deals and collection of money involving methamphetamine or deals and collection of money involving heroin. The evidence showed that Mr. Mendeville helped Mr. Brokus collect money, including the call regarding the collection of money from Mr. Luckey, which it's apparent involved drugs from the discussion afterwards about smoking and using drugs. It's apparent that the problems that Luckey was having paying back the money that was owed to Mr. Brokus related to a drug transaction and drug debts. And based on that evidence, viewing it again in the light most favorable to the verdict, a rational juror could conclude that Mr. Mendeville was involved in the collection of money relating to drug distribution. The jury could also have concluded that Mr. Mendeville played a critical role in the enforcement of the hierarchy in sort of defending the role that Mr. Brokus played at the top of the hierarchy as the supplier and the person who was anointed by the Mexican mafia to collect drug revenue. There were multiple phone calls in which there was discussion regarding Mr. Brokus' exclusive authority to collect drug taxes and Mr. Mendeville's work to help and defend that authority and also Mr. Mendeville's work going out, for example, to Solo, and this is a call at ER 157, going out to Solo's home, another drug dealer, to make sure that he wasn't doing big things, i.e. selling more drugs than the drug taxes that he was paying would suggest that he was selling. And given the role that Mr. Mendeville played in enforcing that responsibility, again, there's absolutely no evidence that Mr. Mendeville said, Mr. Brokus, I'm willing to go out and talk to Solo, but I'm only willing to do it if the debt that Solo owes to you or the drugs that Solo is selling are heroin. If it's methamphetamine, then no deal. I'm not going to do it. Given that there was no evidence at all that Mr. Mendeville drew a distinction between methamphetamine and his heroin when he was working as Mr. Brokus' right-hand man, the jury can conclude that, in fact, Mr. Mendeville did not draw that distinction, and, in fact, Mr. Mendeville did work to further all of the conspiracy's operations, including its methamphetamine and its heroin distribution. And the other thing that I would point out is that in order to collect drug revenue, in order to collect taxes, it's reasonable to infer that Mr. Mendeville, who had a close relationship with Mr. Brokus and who was intimately familiar with Mr. Brokus' business model, it's reasonable to infer that Mr. Mendeville, to collect money, would have to know what he was collecting for. He would have to know exactly what the type and the quantity of drugs that were involved in the conspiracy to know the type of taxes that an individual should be paying to Mr. Brokus. And given that it's reasonable for a jury to draw those inferences, the drug quantity findings with respect to both methamphetamine and heroin should be affirmed. What happens, though, if there were other criminal activities in which the gang was involved, such as extortion or some other variation of loan sharking? Would your argument still hold? Because I'm worried about, you know, in the next case, whether government is not going to be held to its proof of proving that this money was for drugs and for not some other criminal activity. I understand, Your Honor. This case does not present that concern because we have evidence in this particular case that Mr. Mendeville was directly involved in drug distribution. Now, if the gang was involved in drug distribution and in collecting drug revenue, now, if the gang was involved in some other nondrug-related activity, I agree with you that there would be some concern about holding Mr. Mendeville to account for that nondrug-related activity. But that is not an issue in this case because the evidence is clear that the conduct that Mr. Mendeville was engaged in related directly to the distribution of drugs and the collection of drug revenue and drug taxes. And that's where I think the standard that was discussed in Torres really comes into play here. And the standard there that was discussed in Torres is actually the standard that this Court established in Buñuelos, which is whether the type and quantity of drug involved fell within the scope of the defendant's agreement or was reasonably foreseeable to the defendant. Now, Mr. Mendeville's counsel in his opening argument noted the Torres case. However, as the government noted in its answering brief, Mr. Mendeville didn't really advance the argument in his opening brief that the conjunctive formulation of the test should apply, that it must both fall within the scope of the agreement and be reasonably foreseeable to the defendant. I checked the opening briefs during the opening argument, and the opening brief didn't even cite the Torres case. So the government would argue that the argument that the conjunctive formulation of the test should control here is waived. But in any event, for the reasons that Judge Acuda cited in her special concurrence in Torres, the disjunctive formulation of the test controls here, and this Court is bound by Buñuelos, which held that if the drug type and quantity fell within the scope of the defendant's agreement or was reasonably foreseeable to him, then he can be held to account for it under Section 841. Now, the government's argument, and the government would submit, that in fact the evidence was sufficient to find, even if the conjunctive formulation of the test were to apply, that the evidence was sufficient to find both that the type and quantity of methamphetamine fell within the scope of Mr. Mendeville's agreement and was reasonably foreseeable to him. Again, there is absolutely no evidence that Mr. Mendeville's agreement with Mr. Brockes made a distinction between methamphetamine or heroin. There's evidence that, in fact, he offered to do whatever Mr. Brockes asked him to do. And again, no evidence whatsoever that he drew a distinction between methamphetamine and heroin. And there also is evidence that it would have been reasonably foreseeable to Mr. Mendeville. Again, the gang was involved in the distribution of methamphetamine and heroin on a daily basis. There was evidence of that in the record. And again, given Mr. Mendeville's close relationship with Mr. Brockes, Mr. Brockes's tendency to discuss with Mr. Mendeville the particulars of his business model, it's reasonable for a jury to infer that, or a rational juror could infer, that Mr. Brockes also shared with Mr. Mendeville the nature of information regarding the type and quantity of drugs that he was supplying to the low-level dealers and for which Mr. Mendeville was collecting past drug debt and drug revenue taxes. And unless there are questions on any of the other issues that were raised in the case, I would submit on the briefs. I don't have any questions. Counsel, is Judge Gould on the phone? Yes, Your Honor. Judge, just for view from your perspective, evidence that bears on whether Mendeville, a right-hand man, was more of a gopher? I think I have the question. Your Honor, the distinction between a gopher or a right-hand man I think is more of a linguistic distinction rather than one that relates to what role Mr. Mendeville played in the conspiracy. Whether he was a gopher sort of acting at Mr. Brockes's behest or a right-hand man, the evidence is sufficient to conclude that he, in fact, knew and understood that what he was doing related to both methamphetamine and heroin and that he occupied a high role in the conspiracy given his close relationship with Mr. Brockes. But, again, I believe that the evidence is sufficient for a jury to conclude, and I think personally that the evidence shows that Mr. Mendeville did occupy a high-level role in the conspiracy. Again, given his close relationship with Mr. Brockes, Mr. Brockes clearly had respect for Mr. Mendeville. And the other thing is that other members of the gang clearly also respected Mr. Mendeville and feared him. It's apparent, or at least Mr. Mendeville was under the impression, that other members of the gang respected and feared him. There's evidence that when Mr. Brockes, for example, was complaining about two other individual slightly lower-level dealers, Decker and Nacho, when they were attempting to intrude on Mr. Brockes's authority in the gang that had been handed over to him by the Mexican mafia and his authority to collect, there was evidence that Mr. Mendeville offered to go out and tell Nacho and Decker that they weren't doing it right. And the only reason to make that offer is if you believe that Nacho and Decker will cede to your authority and that they will take your word that, in fact, they shouldn't be running around and attempting to collect taxes when they weren't the Mexican mafia anointed individuals designated to do so. And the same goes for Mr. Mendeville's offer to go and check on Solo to see whether Solo was doing big things or collecting more tax revenue or selling more drugs than his tax revenue suggested. Mr. Mendeville said, told Mr. Brockes that he went to Solo and he said, I'm going to be checking on you, and I hope to God you're not doing any more than you haven't got anything else. Now, the only reason that Mr. Mendeville would have done that is if he thought that his threat to Mr. Solo would be heeded. And I would submit that that shows that Mr. Mendeville occupied a higher level and a higher role in the conspiracy than the term gopher would suggest. Thank you very much. And if there are no further questions, I would submit on the briefs. Thank you, Counsel. Thank you, Your Honor. In looking over my notes, I neglected to cite one other case, the United States versus Becerra. There's a trilogy of cases, Banuelos, Torres, and Becerra, that seem to be focusing on this particular area of the law. And the earliest one was Becerra, a 1993 Ninth Circuit case where two brothers were involved in a two-kilogram sale of cocaine, and then one brother broke off later and tried to negotiate a 25-kilogram amount of cocaine. They both pled guilty to conspiracy to distribute cocaine, and the district court gave both of the defendants the 25 kilograms as the amount of drugs under the guidelines and the mandatory minimum. And the Ninth Circuit reversed, and they said, well, the evidence didn't support brother number one's involvement in brother number two's negotiation of the higher amount, and therefore there was no factual support for either the mandatory minimum or the guideline for the brother. And I think that's the type of argument I'm making, that even if the court assumes that Mr. Mendeville was properly convicted of conspiracy to distribute both heroin and methamphetamine by joining the conspiracy, the question remains, is he responsible for all those sales that he had nothing to do with, that Brockes or the telephone would negotiate sales for the delivery of methamphetamine to four other co-defendants, and the government presented the evidence of those seizures, and that's where the methamphetamine was, but Mr. Mendeville had no involvement in those negotiations. And so I think the case really comes down to was it fair and is it supported by the evidence that Mr. Mendeville is now responsible for more than 50 grams of methamphetamine within the scope of his conspiratorial agreement, and there has to be a factual basis to support that, and my argument is simply it's not there. There may be enough to convict him of the overall conspiracy, but it's another question altogether what his guidelines are and whether or not there's a support for the mandatory minimum, and the only way you can have that support is to say that part of his conspiratorial agreement meant that he was involved in those other transactions, those other sales for which he had no involvement whatsoever, and I think looking at that, the court should reverse the methamphetamine finding, reverse the mandatory minimum, reverse the guideline range, and remand it for resentencing. If there's no further questions, I've concluded. Thank you very much, counsel. The matter is submitted for decision by the court.
judges: Gould, Nguyen, Marbley